# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

SABRINA L. MCKINNEY,
CHAPTER 13 STANDING TRUSTEE,

    Plaintiff,

v.

2ND CHANCE AUTO SALES, INC.,

    Defendant.

Miscellaneous Proceeding
Case No.: 19-00302-WRS

## MEMORANDUM DECISION

This Miscellaneous Proceeding comes before the Court on Plaintiff Chapter 13 Trustee Sabrina L. McKinney's ("Trustee") Complaint for Declaratory and Injunctive Relief. (Doc. 1). Trustee seeks to enjoin Defendant 2nd Chance Auto Sales, Inc. ("Second Chance")[1] from garnishing funds held on behalf of Wells Fargo in her capacity as Trustee. For the reasons set forth below, Second Chance is enjoined from taking further action to garnish or attempt to garnish the Trustee without first obtaining leave from this Court. The garnishment process heretofore served is void.

### I. Facts

Plaintiff Sabrina L. McKinney is the standing Chapter 13 Trustee in the Middle District of Alabama. She serves as Trustee in all Chapter 13 cases filed in this District. At any given time, this Court will have 20,000 pending Chapter 13 cases. The identity of the cases is not static;

---

[1] The Court acknowledges that Defendant is an Alabama corporation with the name "2ND Chance Auto Sales, Inc." For simplicity, the Court will spell out "Second" in place of the ordinal number and refer to Defendant as "Second Chance."

approximately 500 new cases are filed every month and an approximately equal number are closed, either through discharge, dismissal, or conversion to another chapter. The primary function of the Chapter 13 Trustee is to administer chapter 13 plans filed in these cases.

The Trustee conducts a meeting of creditors in each case pursuant to 11 U.S.C. § 341 and analyzes each case to determine whether the debtor's plan should be confirmed. The Court relies heavily on the recommendation from the Chapter 13 Trustee as to whether a given case stands in posture to be confirmed.

Once a Chapter 13 case is confirmed, it is the job of the Chapter 13 Trustee to collect plan payments and make disbursements to creditors. The Trustee receives, through plan payment remittances, $100,000,000 every year and disburses that to creditors. In a recent report filed by the Chapter 13 Trustee with the Court, she disbursed $10,000,000 in a single month. To accomplish this feat, the Trustee employs a staff of 50 to conduct her operations, which are funded by an administrative charge made against debtors who file cases in this Court.

Defendant Second Chance is a used car dealer in Montgomery who advertises heavily on local television stations and utilizes the slogan "your job is your credit." Second Chance is a "buy here pay here" used car lot, which means that it finances the purchases and holds the note on vehicles that it sells. Not surprisingly, Second Chance appears frequently in Chapter 13 cases in this Court.

Second Chance obtained a money judgment against an individual named Jonathan Sellers in the District Court for Montgomery County, Alabama, a state court.[2] Presumably, Sellers

---

[2] In the Alabama court system, district courts are courts of limited jurisdiction. For example, in civil actions the district court's jurisdiction is limited to $20,000. ALA. CODE § 12-12-30. To avoid confusion of these courts with federal district courts, the district courts in the Alabama system will be referred to as "state court" while federal district courts will be referred to as "district court."

-2-

Case 19-00302  Doc 24  Filed 01/30/20  Entered 01/30/20 16:33:00  Desc Main
Document    Page 2 of 17

purchased and financed a car from Second Chance but subsequently defaulted on the note.[3] In an effort to collect on its judgment against Sellers, it appears that Second Chance attempted to garnish Sellers' bank account at Wells Fargo. Wells Fargo responded to Second Chance's garnishment process by stating that it was only holding $227.99 in the name of Sellers. (Doc. 1, Complaint at 2). Second Chance challenged this answer on unknown grounds and Wells Fargo failed to respond to the challenge, which resulted in an $8,000 judgment against it to boot.

Wells Fargo is the third largest bank in the United States and a frequent litigant in this Court. This Court conducts Chapter 13 motion dockets every week on Thursdays, and Wells Fargo is almost always in attendance, usually with multiple cases. In this Court's experience, Wells Fargo is a diligent, if not relentless, adversary. The notion that Wells Fargo would stand idly by and permit a sub-prime lender such as Second Chance pick its pocket to the tune of $8,000 strikes the Court as out of character. If Wells Fargo lost a money judgment, fair and square in the amount of $8,000, it can and should pay it—without involving this Court and its Chapter 13 Trustee.

Second Chance brought suit against the Trustee as Garnishee in a state court civil action styled *Second Chance Auto Sales v. Wells Fargo Bank, N.A.,* Case No. DV-2016-902207, in the District Court of Montgomery County, Alabama. The Trustee submitted an affidavit outlining the extraordinary amount of work involved in complying with this garnishment. (Doc. 17, Affidavit of Sabrina McKinney). The Court conducted a hearing on November 19, 2019, and inquired of counsel for Second Chance as to its efforts to collect its judgment directly from Wells Fargo. When its counsel stated that Wells Fargo did not have any assets it could attach (a dubious claim to say the least), the Court inquired whether he had taken a deposition of anyone at Wells Fargo to inquire whether they had any assets, counsel for Second Chance conceded that he had not. Thus,

---

[3] Mr. Sellers does not have an active bankruptcy case in the Middle District of Alabama.

Second Chance seeks to take discovery from the Trustee as to whether her office has previously invoked *Barton* while it has not so much as asked Wells Fargo whether it has any money or property which it may take to satisfy its judgment.

## II. Law

### A. Jurisdiction

As this proceeding involves a garnishment action brought against the Chapter 13 Trustee, who is appointed to serve this Court, this Court has exclusive jurisdiction to hear this matter. 28 U.S.C. § 1334; *Barton v. Barbour*, 104 U.S. 126, 136-37 (1881). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). This is a final order.

This Court is ruling on the pleadings and briefs and attached materials submitted by the parties. As it is undisputed that Second Chance did not first seek leave from this Court to bring a garnishment action against the Trustee, it is not necessary to conduct an evidentiary hearing. As stated by Second Chance in paragraph 5 of its Answer, "if the *Barton* Doctrine is controlling in this case, then the Trustee should prevail because [Second] Chance did not obtain leave of the Court prior to filing the Garnishment, and that fact is not in dispute." (Doc. 13).

### B. The *Barton* Doctrine

#### 1. Its Application to Bankruptcy Courts

As the *Barton* doctrine is dispositive here, the Court will review that case and several lower court decisions in detail. John Barbour was appointed receiver of the Washington City, Virginia Midland, and Great Southern Railroad Company by the Circuit Court for the City of Alexandria Virginia. *Barton v. Barbour*, 104 U.S. 126 (1881). Barbour operated the railroad as a going concern, with a view to ultimately liquidate the railroad for the benefit of all concerned. *Id.* He

apparently believed that value would be maximized if the railroad was maintained and operated as a going concern. *Id*. at 130. While the railroad was in operation under the auspices of Barbour as receiver, Plaintiff Frances Barton was injured in a railroad accident. She brought suit against Barbour for her injuries, in the District of Columbia, without first seeking leave of the court that appointed Barbour receiver, which was a state court in Alexandria, Virginia. *Id.*

There was no dispute that Barton would have what is today known as an administrative priority claim for her injuries. The Supreme Court held that the court in the District of Columbia did not have jurisdiction to hear an action against a receiver appointed by a court of another state. *Id*. 136-37. Thus, *Barton* is a jurisdictional doctrine, withdrawing subject matter jurisdiction over actions against court-appointed receivers, by any court other than the court who appointed the receiver. Restated, *Barton* provides that when one seeks to bring an action against a receiver, one must first proceed against the receiver in the court that appointed him.

The United States Court of Appeals for the Eleventh Circuit first considered the question of whether the *Barton* doctrine applied to trustees appointed in bankruptcy proceedings in the year 2000. *Carter v. Rodgers*, 220 F.3d 1249 (11th Cir. 2000), *cert denied*, 531 U.S. 1077 (2001). In *Carter*, a debtor filed suit in district court against a trustee in bankruptcy for irregularities in a sale of assets conducted by the Trustee pursuant to his official duties. The Eleventh Circuit held that the *Barton* doctrine applied to a trustee in bankruptcy, finding that the trustee is the statutory successor to a receiver, and for that reason the *Barton* doctrine applied. *Id*. at 1252. The Eleventh Circuit held that the district court lacked subject matter jurisdiction over the suit because leave had not been granted by the bankruptcy court. *Id*. at 1253. The ruling in *Carter* was that one who wants to bring suit against a trustee in bankruptcy, for conduct related to his office must first seek

-5-

Case 19-00302   Doc 24   Filed 01/30/20   Entered 01/30/20 16:33:00   Desc Main
Document      Page 5 of 17

leave of the bankruptcy court in which the trustee serves, as no other court has subject matter jurisdiction to consider the question.

In addition to the Eleventh Circuit, 10 other circuits have likewise held that *Barton* applies to suits brought against a trustee in bankruptcy. *See, e.g., Lankford v. Wagner*, 853 F.3d 1119 (10th Cir. 2017) (holding that counsel for trustee in bankruptcy could not be sued without first seeking leave in bankruptcy court); *Villegas v. Schmidt*, 788 F.3d 156, (5th Cir. 2015), *cert denied*, 136 S.Ct. 588 (2015) (holding that the *Barton* doctrine applied and that any party seeking to sue a trustee in bankruptcy in a foreign court must first seek leave from the bankruptcy court); *In re Alexander*, 718 F.3d 762, 767 (8th Cir. 2013) (holding that the *Barton* doctrine applied to actions against a trustee in bankruptcy and rejecting the argument that *Barton* was abrogated by the Bankruptcy Reform Act of 1978); *In re Vistacare Group, LLC*, 678 F.3d 218 (3d Cir. 2012) (holding that the *Barton* doctrine continued to apply to actions against a trustee in bankruptcy and that the bankruptcy court did not abuse its discretion in allowing a garnishment action to proceed in that case); *McDaniel v. Blust*, 668 F.3d 153 (4th Cir. 2012) (holding that *Barton* doctrine applied to suit brought against attorneys for a trustee in bankruptcy); *Beck v. Ft. James Fiber Co. (In re Crown Vantage, Inc.)*, 421 F3d. 963 (9th Cir. 2005) (holding that leave of the bankruptcy court must first be obtained before suit is brought against the trustee, citing *Barton*); *Muratore v. Darr*, 375 F.3d 140 (1st Cir. 2004) (dismissing suit for want of subject matter jurisdiction brought against trustee in bankruptcy where leave was not sought in bankruptcy court, citing *Barton*); *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998) (holding that the "trustee in bankruptcy is [the] statutory successor to the equity receiver," thus, the *Barton* doctrine required that a party seeking to sue a trustee in bankruptcy must obtain leave bankruptcy court, and that the bankruptcy court did not abuse its discretion in denying leave); *Lebovits v. Scheffel (In re Lehal Realty Assoc.)*, 101 F.3d

272 (2d Cir. 1996) (affirming the holding of the district court enjoining suit against a trustee in bankruptcy which had been brought in state court, citing *Barton*); *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F 2d. 1236, 1240 (6th Cir. 1993) (stating that "it is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court"); *Leonard v. Vrooman*, 383 F2d. 556, 560 (9th Cir. 1967) ("It is undisputed that a trustee in bankruptcy is an officer of the court, [ . . . ] and that as such, he is not subject to suit without leave of the appointing court for acts done in his official capacity and within his authority as an officer of the Court.") (internal citations omitted); *Stone v. White (In re Stone)*, No. 92-1383, 1998 WL 1819081 (Bankr. D.C. Nov. 4, 1998) (holding that *Barton* applied to actions against a trustee in bankruptcy and that it was the only court that had subject matter jurisdiction over an action against a trustee in bankruptcy serving in that court). The reported case law clearly supports Trustee's assertion that the *Barton* doctrine is applicable to trustees in bankruptcy.

**2. The *Barton* Doctrine Applies to Garnishment Actions Against a Trustee in Bankruptcy**

Second Chance argues that *Barton* does not apply because a garnishment action is not a lawsuit against the Trustee. (Doc. 18, pp. 16-18). Review of reported case law and relevant Alabama statutes reveals that this argument is without merit.

The Bankruptcy Court in the Northern District of Georgia recently handed down a well written and well-reasoned decision dealing with a garnishment action brought against a trustee in bankruptcy. *In re Jankauskas*, 593 B.R. 1 (Bankr. N.D. Ga. 2018). In *Jankauskas*, a creditor who had been garnishing a debtor prior to a bankruptcy filing, sought to garnish funds in the hands of the Chapter 13 trustee after the debtor's bankruptcy case was dismissed. *Id.* at 3. The Court in

-7-

Case 19-00302 Doc 24 Filed 01/30/20 Entered 01/30/20 16:33:00 Desc Main
Document Page 7 of 17

*Jankauskas*, held that "[i]t is well-established in the Eleventh Circuit and other circuits that the *Barton* Doctrine requires a party to obtain leave of the bankruptcy court before initiating an action in any non-bankruptcy courts against a bankruptcy trustee for acts done in the trustee's official capacity." *Id*. at 6 (citing *Carter v. Rogers*, 220 F.3d 1249, 1252 (11th Cir. 2000)).

The Court found that the garnishment action against the trustee was an "action," and thus violated the *Barton* doctrine. *Id*. at 10. Further, the court in *Jankauskas* cited the administrative burden faced by trustees if creditors were to routinely garnish funds held by a trustee at the time a Chapter 13 case was dismissed. *Id.* at 8.

Additionally, numerous courts have held that the *Barton* doctrine acts to shield trustees in bankruptcy from unauthorized garnishment actions in foreign courts. S*ee, e.g., In re Shields*, 431 B.R. 446 (Bankr. S.D. Ind. 2010) (holding that *Barton* applied to insulate trustee from state law attachment); *NVLAND, Inc. v. Vogel (In re Ocean Downs Racing Assn., Inc.)*, 164 B.R. 249 (Bankr. D. Md. 1993) (holding that Chapter 11 trustee was not subject to garnishment on state court judgment); *In re Yatko*, 416 B.R. 193, 201 (Bankr. W.D.N.C. 2008) ("A garnishment, attachment[,] or supplemental proceeding against the bankruptcy trustee cannot be maintained without relief from the stay and/or prior leave of the appointing bankruptcy court.").

Second Chance initiated the garnishment proceeding against the Trustee under the laws of the State of Alabama. As such, a review of Alabama statutes regarding garnishment is instructive. Under Alabama law, a "garnishment" is defined as the

> process to reach and subject money or effects of a defendant in attachment, in a judgment or in a pending action commenced in the ordinary form in the possession or under the control of a third person, or debts owing such defendant or liabilities to him on contracts for the delivery of personal property, on contracts for the payment of money which may be discharged by the delivery of

Case 19-00302    Doc 24    Filed 01/30/20    Entered 01/30/20 16:33:00    Desc Main
Document      Page 8 of 17

personal property or on contracts payable in personal property; and such third person is called the garnishee.

ALA. CODE § 6-6-370 (2018).

Alabama law requires the garnishee to file an answer to the process of garnishment within 30 days of service, which she must serve on the plaintiff and the defendant. ALA. CODE § 6-6-450 (2018). Upon plaintiff's timely demand, the garnishee may be subject to an in-court oral examination. *Id.* If the garnishee admits that she is in possession of funds owed to the defendant, she must tender those funds, up to the full amount of the judgment, to the clerk of court. ALA. CODE § 6-6-452 (2018). In the event the garnishee fails to appear or file an answer to the garnishment, she is subject to a conditional judgment for the full amount of the plaintiff's monetary judgment, which becomes permanent 30 days after notice of the conditional judgment. ALA. CODE § 6-6-457 (2018).

Second Chance's argument that garnishment proceedings are not civil actions is surprising in light of the circumstances that gave rise to Second Chance's money judgment against Wells Fargo. Wells Fargo is not the defendant in the initial underlying dispute; the judgment that Second Chance now seeks to collect was entered in a previous garnishment proceeding involving Wells Fargo, who apparently failed to respond to Second Chance's challenge to the Garnishment Answer filed by Wells Fargo. As such, Second Chance was rewarded with a money judgment against it, which Second Chance now seeks to collect here.

By seeking to enforce a garnishment against the Trustee, yet argue that garnishments are not civil actions, Second Chance takes diametrically opposed positions at the same time. It was certainly a civil action when Second Chance asked the state court in Montgomery County, Alabama, to enter a money judgment against Wells Fargo for failing to defend its Garnishment Answer. It is a judgment in a civil action which Second Chance seeks to collect here. If the

Trustee here was to disregard the garnishment process, Second Chance would certainly seek a money judgment against the Trustee in the same manner as it did against Wells Fargo. Accordingly, Second Chance's argument that the garnishment action it brought against the Trustee is not a civil action is nonsensical.[4]

The Fifth Circuit held, in a case binding on this Court, that garnishment actions are "independent suits." *Butler v. Polk*, 592 F.2d 1293, 1295 (5th Cir. 1979).[5] The Fifth Circuit held that a garnishment action could be removed to federal court. Second Chance's argument, that garnishment actions are not civil actions is flatly contradicted by *Butler*. If garnishment actions were not civil actions, they could not be removed from state to federal court.[6]

As garnishment actions against a trustee are civil actions, it follows that *Barton* withdraws subject matter jurisdiction from any court other than the court in which the trustee serves where, as here, someone attempts to garnish funds in the hands of a trustee.

### C. Second Chance's Remaining Arguments All Lack Merit

Second Chance asserts four arguments against the application of the Barton doctrine, none of which the Court finds persuasive. As set forth in sub-parts II(C)(1)-II(C)(4), infra, the Court will address each argument in turn.

---

[4] Second Chance's only argument against garnishments as "civil actions" is the exclusion of "garnishments" from FED. R. CIV. P. 7. As Rule 7 deals only with the order and style of pleadings in civil actions, this argument is baseless, and the Court will not address it further.
[5] The Eleventh Circuit adopted all decisions of the Fifth Circuit which were in effect on September 30, 1981, as binding precedent. 661 F.2d 1206 (11th Cir. 1981) (*en banc*). For that reason, *Butler v. Polk* is binding precedent in the Eleventh Circuit.
[6] The Court does not mean to be critical of the Trustee here, but if she had removed Second Chance's garnishment action to this Court, rather than file a separate civil action, it could have dismissed the action for want of subject matter jurisdiction rather than declare it void, leaving that matter pending in state court subject to an injunction.

### 1. The Exception to *Barton* Contained in 28 U.S.C. § 959(a) Does Not Apply

Second Chance cites 28 U.S.C. § 959(a) for the proposition that it may proceed against the Trustee notwithstanding *Barton*. Section 959(a) provides as follows:

> [t]rustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to a jury trial.

28 U.S.C. § 959(a).

The Eleventh Circuit in *Carter v. Rogers* interpreted the scope of this exception as follows: "[t]he 'carrying on business' exception in section 959(a) is intended to 'permit actions redressing torts committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a retail store.'" 220 F.3d at 1254 (citing *Lehal Realty Assocs*, 101 F.3d at 276). In the case at bar, the Trustee is not carrying on the business activity of a debtor and for that reason § 959(a) does not apply. *See also Muratore v. Darr*, 375 F.3d 140, 145 (1st Cir. 2004) (holding that § 959(a) applies only to "acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise"); *Austrian v. Williams*, 216 F.2d 278, 285 (2d Cir. 1954) (to same effect).

Considering the plain language of this statute, it is apparent that this exception applies only to "*acts or transactions in carrying or business connected with such property.*" 28 U.S.C. § 959(a). In the case at bar, the Trustee is not carrying on any business. Rather, she is administering Chapter 13 plans according to their terms and the provisions of the Bankruptcy Code. Because the Trustee

in this case is not carrying on the business of debtors, the exception of § 959(a) does not apply by virtue of its plain language.

### 2. *In re Brickell* Does Not Support Second Chance's Position

Second Chance cites the case of *In re Brickell*, 142 F.App'x 385 (11th Cir. 2005), contending that garnishment actions against trustees in bankruptcy may be allowed. (Doc. 18, p. 6). While *Brickell* did involve a garnishment proceeding that had been allowed by the bankruptcy court to proceed, it does not help Second Chance here. *Brickell* involved a dispute between Norman Brickell, a debtor, and Dorothea Brickell, his former spouse. Dorthea had a claim against Norman's estate in the amount of $19,898.06.

Dorthea unsuccessfully disputed Norman's right to a discharge, then appealed the unfavorable bankruptcy court determination to district court, but again lost. *In re Brickell*, 292 B.R. 705, 707 (Bankr. S.D. Fla. 2000). Finding Dorthea's litigation frivolous, the bankruptcy court awarded sanctions against Dorthea and in favor of Norman in the amount of $14,341.82. *Id.* at 707. Dorthea's troubles did not end there. Her former lawyers obtained a money judgment in the amount of $9,736.04 against her in state court for unpaid attorney's fees. *Id*.

Norman moved the bankruptcy court for a writ of garnishment in order to collect his sanctions judgment by garnishing the amounts due Dorthea under her claim, to which the trustee filed no response. *In re Brickell*, 142 F.App'x. 385, 387 (11th Cir. 2005). Dorthea's former lawyers, on the other hand, obtained a writ of garnishment in the state court that issued the judgment and served it on the trustee. *Brickell*, 292 B.R. at 707.

Before disbursement, the trustee filed an *ex parte* motion with the bankruptcy court requesting permission to divert Dorthea's disbursement to Norman and Dorthea's former lawyers in accordance with the both processes of garnishment. *Id.* The Bankruptcy Court ordered the

-12-

trustee to disburse Dorthea's share to the two garnishors on a pro rata basis. *Brickell*, 142 F.App'x. at 387.

Dorthea appealed all the way to the Eleventh Circuit, arguing that amounts due her on her claim against Norman's estate were not subject to garnishment. *Id.* The Eleventh Circuit ruled against Dorthea, finding her claims to be without merit and allowed the garnishments of amounts due Dorthea on her claim. *Id.* at 391.

The most obvious difference between *Brickell* and the case at bar is that the trustee in *Brickell* did not invoke the *Barton* doctrine. In fact, the trustee in *Brickell* actively sought permission to disburse the estate funds in accordance with the two garnishments. *Brickell*, 292 B.R. at 707. The Trustee in *Brickell* undoubtedly viewed the garnishment as a "one off" situation that would impose little administrative burden, rather than one which would impose considerable burdens for a lengthy period of time.

Moreover, the *Barton* doctrine is not mentioned by the Eleventh Circuit anywhere in its decision in *Brickell*. *See generally*, 142 F.App'x. 385 (11th Cir. 2005). *Barton* is a doctrine to shield the trustee, but the trustee in *Brickell* actively chose to not raise her shield. Put differently, the trustee in *Brickell* did not invoke *Barton*, while the Trustee in the case at bar has. Accordingly, Second Chance's citation of *Brickell* is unavailing as it has no application once, as here, the trustee invokes her rights under *Barton*.

### 3. Second Chance's Waiver Argument Lacks Merit

Second Chance makes much of the fact that its lawyer has garnished the trustee in unrelated actions. (Doc. 18, Affidavit of Richard Dean). To be sure, the Trustee in this case, as well as other trustees in other courts have allowed garnishment actions to proceed, as evidenced by *Brickell*. 142 F. App'x. 385 (11th Cir. 2005). Another example was handed down by this Court in *In re*

-13-

*Jordan*, Case No. 17-3092, slip op., 2019 WL 1284291 (Bankr. M.D. Ala. Feb. 20, 2019). In *Jordan*, a bank brought an adversary proceeding seeking a determination that a debt owed to it should be found to be excepted from the debtor's discharge pursuant to 11 U.S.C. § 523(a)(2) (providing that debts arising out of fraud are excepted from discharge). The parties settled the case for a declaration that the debt was $800,000 (a compromise) and that it would be paid on a schedule set out in the settlement agreement. When the debtor defaulted on his obligation under the settlement agreement, the bank initiated garnishment proceedings in this Court. Garnishment process was issued and the debtor's employer began paying at a rate of $600 per month.

When the Court realized that it would be administering a garnishment action in perpetuity, or nearly so, it set the matter for hearing and explained its difficulty to counsel for the bank. When the bank refused to take this Court's hint to go elsewhere to collect its debt, the Court abstained from further proceedings, notwithstanding the fact that the garnishment had been in effect for several months. *Id*. at *2 (abstaining pursuant to 28 U.S.C. § 1334(c)).

The bank moved the District Court to withdraw the reference to Bankruptcy Court.[7] The bank sought there to either: (1) permit the garnishment to go forward in District Court, or (2) to force the Bankruptcy Court to do the bank's bidding and proceed to garnish the debtor's wages. The District Court denied the bank's various motions recognizing the administrative burden that would be placed on the bankruptcy court, concluding that "[a]s the bankruptcy court suggested, if all creditors utilized federal courts in the way Plaintiff proposes, the administrative burden would

---

[7] All bankruptcy jurisdiction is vested in the District Court. 28 U.S.C. § 1334. The District Courts in turn may refer bankruptcy cases and related proceeding to bankruptcy judges. 28 U.S.C. § 157(a). The District Court may withdraw its reference on its own motion or the motion of any party. 28 U.S.C. § 157(d). Perhaps out of concern that this Court's order of abstention was not a final, appealable order, the bank chose to move to withdraw the reference rather than appeal the order of abstention.

be unbearable. Federal courts are not debt-collection agencies." *ServisFirst Bank v. Jordan (In re Jordan)*, No. 19-MC-3857, slip op. at *2, 2019 WL 2016527 (M.D. Ala. May 7, 2019).

Second Chance suggests that it has somehow been unfairly put upon because the Trustee and the Court are not eager to comply with its garnishment process. As shown in *Jordan*, Second Chance is not the only disappointed garnishing creditor. In addition, the Eleventh Circuit in *Brickell* stated that a "garnishment should not be allowed if it unnecessarily complicates the administration of the bankruptcy estate." 142 F.App'x. at 390. This is remarkable because the trustee in *Brickell* did not object to the garnishments; in fact, she actively sought permission to honor the garnishments through disbursements. *Id.* at 387. There was no issue concerning administrative burden on trustees in that case; nevertheless, the Eleventh Circuit was undoubtedly concerned that even its unreported decision would be improperly used against other trustees—as has happened here.

While the procedural posture of *Jordan* and the case at bar are different—*Jordan* involved abstention while this case involves the *Barton* doctrine—the commonality in this case and *Jordan* are that both involve garnishment proceedings that would burden the bankruptcy court and a trustee in bankruptcy. Second Chance argues that the administrative burden is not a relevant consideration. (Doc. 18, pp. 18-22) Yet, this argument runs afoul of *Brickell*, *Jordan*, and *Jankauskas*.

There is no indication in the record that the Trustee has waived her right to invoke the protection of the *Barton* doctrine here. Indeed, the Trustee argues vigorously that *Barton* voids the garnishment action. Second Chance can point to nothing which supports its argument that she has waived *Barton* in the case at bar. Further, it is immaterial whether the Trustee waived her rights under *Barton* in prior cases; a party's waiver of its rights in one case does not constitute a

waiver of rights in a wholly unrelated case. As such, this Court has denied Second Chance's request to conduct discovery on that point finding that it articulated no good reason to conduct discovery and that such an open-ended fishing expedition would accomplish nothing but impose further costs on the Trustee.[8] Accordingly, Second Chance's waiver defense lacks merit.

### 4. Funds Held by the Trustee are *In Custodia Legis*

While the Trustee enjoys protection from unauthorized lawsuits under the *Barton* doctrine, the property in her charge is protected under the doctrine of *in custodia legis* while it remains in her charge. Put simply, "[f]rom the moment that a debtor's petition is filed in the bankruptcy court, the debtor's property is in custodia legis." *Thinking Machines Corp. v. Mellon Fin. Serv. Corp.*, 67 F.3d 1021, 1025 (1st Cir. 1995). Additionally, "[w]hile property is *in custodia legis*, it is not subject to levy or attachment *in any form*." *In re Steenstra*, 307 B.R. 732, 740 (1st Cir. B.A.P. 2004) (citing *Cox v. Cox*, 356 F.3d 76, 93 at n.16 (1st Cir. 2004)).

While the doctrines of *Barton* and *in custodia legis* are coexistent while the bankruptcy case is pending, the protection accorded by the doctrine of *in custodia legis* terminates upon the dismissal of the bankruptcy case. *See Steenstra*, 307 B.R. at 740; *see also*, *In re Jankauskas*, 593 B.R. 1, 9 (Bankr. N.D. Ga. 2018) ("even though the [ . . . ] doctrine of *custodia legis* might not apply to funds held by a trustee once a bankruptcy case is dismissed, the *Barton* doctrine continues to apply").

Second Chance has not identified the specific bankruptcy estates it intended to garnish, and the Trustee, through her brief, has not indicated that any funds would be sourced from dismissed bankruptcy cases. Therefore, the funds sought by Second Chance are still *in custodia legis* due to

---

[8] Second Chance's discovery requests call for the Trustee to look back to every case she, and her predecessor, handled to 1997 and answer a series of questions and produce documents. (Doc. 21).

the pendency of the various bankruptcy estates. *See In re Steenstra*, 307 B.R. 732, 740 (1st Cir. B.A.P. 2004). As such, the funds, independent of the *Barton* doctrine, are beyond the reach of any "levy or attachment in any form." *Id.* (citing *Cox v. Cox*, 356 F.3d 76, 93 at n.16 (1st Cir. 2004).

### III. Conclusion

This case is governed by the *Barton* doctrine and the Eleventh Circuit's decision in *Carter v. Rogers*. If Second Chance wants to proceed against the Trustee, it must first obtain leave from this Court. As it has not, process issued out of the state court in Montgomery County against the Trustee is void. Additionally, the arguments of statutory exception and waiver advanced by Second Chance lack merit and are rejected. Finally, the funds held by the Trustee on behalf of active bankruptcy estates are *in custodia legis*. Accordingly, Second Chance is hereby **ENJOINED** from taking any further action against the Trustee in this matter, unless and until it receives leave from this Court, and the process of garnishment heretofore served on the Chapter 13 Trustee is **VOID**. The Court will enter judgment by way of a separate document.

Done this 30th day of January, 2020.

William R. Sawyer
United States Bankruptcy Judge

c: Sabrina L. McKinney, Trustee/Plaintiff
Audrey L. Willis, Attorney for Trustee/Plaintiff
Richard C. Dean, Jr., Attorney for Defendant
2nd Chance Auto Sales, Inc.